IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BLOOM ENERGY CORPORATION, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:22-cv-00101-JRG-RSP |
| § | |
| PLANSEE SE and GLOBAL TUNGSTEN § | |
| AND POWDERS CORP., § | |
| § | |
| *Defendants*. § | |

## REPORT AND RECOMMENDATION

Before the Court, defendants Plansee SE and Global Tungsten and Powders Corp. ("GTP") move to either dismiss or stay the entire action pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3) in accordance with an arbitration agreement. Dkt. No. 17. Alternatively, the defendants move for dismissal of claims under the RICO Act and Clayton Act pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the underlying arbitration clause delegates the issue of arbitrability to an arbitrator, it is the recommendation of the undersigned that the motion be **GRANTED** to **STAY** the instant action pending arbitration.

On April 1, 2010, Bloom Energy Corporation, Plansee, and GTP entered into an Intellectual Property and Confidential Disclosure Agreement (the "IP Agreement") "to distinguish and define the existing intellectual property rights belonging to each party and to establish an agreement governing the rules for the allocation of such future rights that arise…" Dkt. No. 2-19 p 2. Section 3.2 of the contract relates to dispute resolution and reads:

> **Section 3.2** <u>Dispute Resolution</u>. If disagreements arise under this Agreement or concerning its execution, validity formation or interpretation thereof, the following procedure shall apply:
>    a) The senior management of the parties shall meet to attempt to resolve such disagreement(s) in good faith.

> b) The disagreement shall, if not resolved through negotiations in accordance with a), be referred to and finally determined by arbitration in accordance with the WIPO Expedited Arbitration Rules. The place of arbitration shall be Geneva, Switzerland. The language to be used in the arbitral proceedings shall be English.

*Id.* p 6.

On February 9, 2022, defendants initiated arbitration against Bloom alleging (1) breach of the IP Agreement for non-payment of a contractual royalty, (2) breach of the IP Agreement for violation of a non-solicitation clause, (3) patent infringement by Bloom and Bloom's third party suppliers, and (4) know-how misappropriation. Dkt. No. 1 ¶ 76; Dkt. No. 28 p 2.

On April 3, 2022, Bloom filed this declaratory judgment action seeking (1) correction of inventorship of the asserted patents, Count I, (2) invalidity of the asserted patents under multiple theories, Counts II-III & VI (3) unenforceability of the asserted patents under multiple theories, Counts IV-V, (4) a finding of non-infringement of the asserted patents, Count VI, (5) a finding of no misappropriation, Count VIII, (6) a finding of unfair competition, Count IX, (7) a finding of tortious interference with contract, Count X, (8) a finding of breach of contract of a related supply agreement, Count XI, (9) a finding of breach of warranty of various supply agreements and purchase orders, Count XII, (10) a finding of violation of the RICO Act, Count XII, (11) a finding of violation of the Clayton Antitrust Act, Count XIV. Dkt. No. 1 ¶¶ 138-438; Dkt. No. 28 p 9. On May 20, 2022, arbitrator Mr. Peter Michaelson held a procedural conference and stayed arbitration until this Court issues a jurisdictional ruling. The subject patents of this declaratory judgment action include U.S. Patent Nos. 8,753,785 (the "'785 patent"); 8,802,328 (the "'328 patent"); and 9,434,003 (the "'003 patent").

Defendants filed the instant motion challenging this Court's ability to adjudicate Bloom's claims and alternatively to dismiss the RICO and Clayton Acts claims for failure to state a claim.

Dkt. No. 17 & 32. Bloom opposes, arguing among other things that the agreement's arbitration clause does not delegate the threshold issue of arbitrability to the arbitrator. Dkt. Nos. 28 & 36.

A determination of whether Bloom's claims fall within the scope of the agreement requires interpretation of the agreement, which is clearly and unmistakably delegated to an arbitrator pursuant to Section 3.2(b) of the contract. Dkt. No. 2-19 p 6 ("If disagreements arise under this Agreement or concerning its execution, validity formation or *interpretation* thereof … b) The disagreement shall … be referred to and finally determined by arbitration …") (emphasis added). Accordingly, the threshold issue of arbitrability is arbitrable.  However, the Court will address the arbitrability of the claims, solely for purposes of any reviewing court that might disagree with this Court's view of the scope of the arbitration clause.

If it were necessary to address the arbitrability of each claim, the Court is of the opinion that each claim falls within the scope of the arbitration clause of the IP Agreement directly or indirectly, or alternatively that the resolution of arbitrable claims will inform the merits of those claims not covered by the arbitration clause in such a way as to justify staying those claims as well.

For example, the IP Agreement was entered into for among other reasons "to distinguish and define the existing intellectual property rights belonging to each party and to establish an agreement governing the rules for the allocation of such future rights that arise …" Dkt. No. 2-19 p 2. The first count of the complaint seeks correction of inventorship based upon an allegation that confidential information shared by Principal Bloom Engineer Steve Couse was used by the defendants to obtain the asserted patents. Dkt. No. 1 ¶¶ 32-55, 138-165. Because this is an attempt to challenge inventorship, it challenges ownership, and thus arises under the IP Agreement. Other courts have also decided that inventorship is an arbitrable issue under similar contracts. *Invista N. Am., S.A.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 204 (D.D.C. 2007)

(compiling cases from the Northern District of California, Northern District of New York, and Northern District of Illinois). Similarly, the second count of the complaint seeks a finding of invalidity for omitting Couse as an inventor if the Court determines that inventorship cannot be corrected. *Id.* 166-171. Accordingly, Counts I and II related to inventorship are arbitrable. These core disputes about misappropriation of the trade secrets shared under the IP Agreement also clearly concern its "execution."

Next, Bloom argues that the IP Agreement does not refer to challenges of noninfringement, invalidity, and unenforceability. Defendants rely on 35 U.S.C. § 294, which addresses voluntary arbitration of patent disputes, and provides, "In any such arbitration proceeding, the defenses provided for under section 282 shall be considered by the arbitrator if raised by any party to the proceeding." Those defenses expressly include noninfringement, invalidity, and unenforceability. 35 U.S.C § 282. The IP Agreement does not provide for any specific carveout and, Bloom fails to show why 35 U.S.C. § 294 should not be read together with the IP Agreement. Bloom also asserts that this suit is not brought to vindicate contractual rights, Dkt. No. 28 pp 15, but nonetheless asserts that claims of noninfringement, invalidity, and unenforceability "arise out of Plansee's claims of patent infringement" in arbitration proceeding. Dkt. No. 1 ¶ 9. Accordingly, Counts III-VII relating to noninfringement, invalidity, and unenforceability are arbitrable.

Regarding Bloom's Count VII, which seeks a declaratory judgment of no misappropriation, Bloom argues that the IP Agreement does not cover the disclosure of confidential information by those not party to the IP Agreement. Dkt. No. 28 pp 16-17. However, the defendants' claim of misappropriation raised in arbitration is directed to Bloom, which is a party to the IP Agreement. Compare Dkt. No. 2 ¶ 232, with Dkt. No. 2-19. Further, the IP Agreement defines "Intellectual Property" to include "Confidential Information" and provides for the parties' obligations with

4

respect to, and ownership of, Confidential Information. Dkt. No. 2-19 pp 2 & 5-6. Accordingly, defendants' claim that Bloom misappropriated confidential information is arbitrable, and thus so is Count VII as a defense to the defendants' claim.

Regarding Bloom's Count IX for unfair competition, Bloom asserts it "is based on the knowing and intentional use of technology that Defendants took from Bloom to obtain the patents that it now asserts against Bloom and Bloom's other IC suppliers." Dkt. No. 28 p 17; see also Dkt. No. 2 ¶ 249-253 ("[A]fter Bloom disclosed its designs to Plansee, Plansee converted Bloom's designs by filing patents on them… Now, Plansee is attempting to use the very same patents—the Patents-in-Suit, which contain converted inventions—to collect royalties for any ICs manufactured according to Bloom's specifications. This is patent misuse."). Thus, the tortious claim of unfair competition is intertwined with ownership suggestive of its arbitrability under the agreement. Even if not arbitrable under the agreement, resolution of ownership is essential to the merits of Count IX.

The same logic applies to Bloom's Count X for tortious interference with contract, Count XIII for violation of the RICO Act, and Count XIV for violation of the Sherman Act. Regarding the claim for tortious interference with contract, Bloom claims that defendants' actions seeking a license from Bloom's suppliers are not justified because, among other reasons, the asserted patents were allegedly obtained from confidential information provided by Bloom employee Couse without listing Couse as an inventor. Dkt. No. 2 ¶ 262. Regarding the claims for violations of the RICO Act and Sherman Act, Bloom claims, among other things, that Plansee committed fraud on the USPTO by purposefully omitting Couse as an inventor. *Id*. ¶¶ 326-337, 389-405. Because these claims are also intertwined with ownership, they are likely arbitrable. Nonetheless, resolution of

ownership will inform the merits of Count X for tortious interference with contract, Count XIII for violation of the RICO Act, and Count XIV for violation of the Sherman Act.

In addition to that already discussed with respect to Count IX and X, Bloom argues that the claims cannot fall within the IP Agreement because Plansee's acts began before the agreement's effective date. However, the IP Agreement defines intellectual property developed before the contract as "Background IP" and provides for the ownership of and related rights of Background IP. Dkt. No. 2-1 pp 2-3. Thus, disputes with respect to Background IP, including disputes over the legality of Plansee's acts to obtain the Background IP, fall within the arbitration clause.

Finally, Count XI alleges that GTP breached its supply contract with Bloom and Count XII alleges that GTP breached the warranty under the same supply agreement and related purchase agreements. Bloom argues that "the only dispute raised in Counts XI and XII is whether there has been a breach of the 2012 Supply Agreement or purchase orders, and not whether such a breach constitutes a separate breach of the IP Agreement." Dkt. No. 28 p 19. Bloom then argues that "[w]hether there will be a disagreement that arises under the IP Agreement will not occur until a breach is determined under the 2012 Supply Agreement or purchase orders." *Id.* p 20. That logic suggests that a dispute with the supply agreement and purchase orders are intertwined with disputes under the IP Agreement. Further, the IP Agreement includes provisions regarding supply agreements between Bloom and GTP. Dkt. No. 2-19 p 4-5 (Section 1.1(C)(2) & (3) of the IP Agreement). Because the arbitration clause does not carve out issues arising under supply agreements and purchase agreements between Bloom and GTP, Counts XI and XII are arbitrable.

For the reasons expressed above, it is the **RECOMMENDATION** of the undersigned that Plansee's and GTP's motion be **GRANTED** to **STAY** the entire action subject to an arbitrability determination by the arbitrator of each claim.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to the Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 9th day of February, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE